# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: NATCO, INC., <br><br> **Debtor** | Case No. 2:09-bk-52145 <br> **Chapter 11** |
| NATCO, INC., <br><br> **Plaintiff,** <br><br> v. <br><br> HONORABLE DOROTHY M. LUNDIN, CLERK OF THE 25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES; ENVIRONMENTAL OPERATORS, L.L.C; TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA; PLAQUEMINES PARISH GOVERNMENT, <br><br> **Defendants.** | Adversary Proceeding No. 09-05047 |

## RESPONSE TO MOTION TO INTERPLEAD FUNDS

COMES NOW, Travelers Casualty and Surety Company of America ("Travelers"), Defendant and Cross-Defendant in this matter, and submits this Response to the Motion to Interplead Funds (Docket No. 11) filed by Defendant Dorothy M. Lundin, Clerk of the 25th Judicial District Court for the Parish of Plaquemines ("State District Court"), respectfully showing as follows:

### I.   SUMMARY

The issues before this Court extend beyond the present request of the State District Court Clerk to deposit funds into the Court Registry and be dismissed from this adversary proceeding. In direct response to the State District Clerk's Motion, Travelers acknowledges that multiple

parties are making claim to the funds remaining in the Registry of the District Court (the "Registry Funds" or "Funds"). In Case No. 54-911, *Environmental Operators, LLC v. NATCO, Inc, et al,* presently before the State District Court (the "State Court Litigation"), and subject to the automatic stay imposed by NATCO's bankruptcy filing, both NATCO and Environmental Operators each claim an interest in the entirety of the Registry Funds. However, **Travelers** holds the priority interest in the Registry Funds pursuant to its rights of equitable subrogation, its status as the beneficiary of an express trust established under the Indemnity Agreement executed by Debtor on November 27, 2006 (the "Indemnity Agreement"), and the rights acknowledged and granted by the Agreed Order entered by this Court on June 3, 2009 (Main Case No. 09-51245, Docket No. 48) (the "Surety Order").

In the first place, the Registry Funds should remain in the forum where the state court issues will be adjudicated in order to ensure that the party with the right to the Funds is guaranteed to recover its money. If the Funds and the litigation are separated, the possibility for conflicting adverse judgments arises, potentially leaving a prevailing party with no Funds to collect or a party facing liability in one forum, but exoneration in the other. Furthermore, because NATCO's interest in the Registry Funds has yet to be determined, the Funds are not property of the estate. Alternatively, if the Funds are property of the estate, NATCO holds only legal title to the Funds and therefore, if removed for the State Court Registry, they must be paid to Travelers pursuant to the Surety Order or, at a minimum, set aside pending the determination of the parties' rights to the Funds and Travelers' release from any liability to NATCO's subcontractor. It would be absurd to allow Environmental Operators to take possession of the Registry Funds prior the resolution of the State Court Litigation, and the same holds true for allowing NATCO to take possession of the Funds.

Conceptually, the Registry Funds may be likened to secured property. A debtor cannot employ the bankruptcy process to utilize secured property (or the proceeds from a sale thereof) to fund its reorganization without sufficient adequate protection to its secured creditors. Likewise it would be wholly inequitable to allow a debtor to employ the bankruptcy process to take possession and make use of funds, the rights to which have as yet to be determined and which funds have been specifically sequestered by another court, to subsidize its reorganization without sufficient adequate protection to the parties holding claims to those discrete funds.

Should this Court be persuaded that the Registry Funds can or ought to be interpleaded, they must be placed in this Court's Registry and held outside the reach of NATCO until the rights and interests of all parties, and namely Travelers, have been finally adjudicated. Under no circumstances should NATCO be given an opportunity to make an end run around the State Court Litigation with regard to its entitlement and access to the Registry Funds so long as Travelers remains liable to NATCO's subcontractors and suppliers, or is subject to claims by NATCO's subcontractors and suppliers, including Environmental Operators.

## II.     ARGUMENTS AND AUTHORITY

In this case, the Registry Funds represent the withheld contract balances on a project performed by NATCO and bonded by Travelers, only instead of the owner of the project holding the remaining contract balances, the State District Court holds them in its registry. The Registry Funds are the sole, equitably- and statutorily-dedicated source of payment for subcontractors and suppliers and of recovery by Travelers, as surety. In order to avoid a wholly inequitable outcome, the Registry Funds must stay with the State Court Litigation or be held outside of the bankruptcy estate until the rights of Travelers and the other parties to the State Court Litigation are finally adjudicated.

Specifically, the purpose of the Funds having been interplead in the first place is that the conflicting claims to the contract balances (now the Registry Funds) put the owner of the project in the untenable position of having multiple parties claiming an interest in the funds. By placing them in the Court Registry, they were preserved **for all parties**, pending the determination of the parties' rights and interests. If the State Court Litigation determines that Environmental Operators is entitled to the Registry Funds, those dedicated Registry Funds are available to pay the claim. If the Funds are disbursed to the bankruptcy estate prematurely and the rights of a competing party are later determined to be valid, that competing party, ultimately Travelers, will suffer an unnecessary, avoidable and inequitable loss, much in the same way a secured creditor would suffer an inequitable loss if its collateral was allowed to be disposed of prematurely and without compensation or adequate protection. Additionally, if the Funds are not set aside until ALL claims are resolved and all parties have had their interests adjudicated and/or released, it is possible for conflicting outcomes to occur between this Adversary Proceeding and the State Court Litigation. For the sake of equity, the Funds must remain with the State District Court or be set aside until all parties' rights have been finally adjudicated.

### A. <u>TRAVELERS HAS A PRIORITY INTEREST IN THE REGISTRY FUNDS THROUGH THE CONCEPT OF EQUITABLE SUBROGATION</u>

As the surety for NATCO, Travelers has an equitable subrogation interest in all bonded contract balances (i.e. the Registry Funds), which interest is superior to any interest held by the bankruptcy estate or any other creditors thereof. *See Pearlman v. Reliance Insurance Co.,* 371 U.S. 132 (1962). When a surety pays a claim of a subcontractor or supplier of a construction contractor, it is entitled the to the outstanding contract balances of that contract. *Id.* Because the surety has become subrogated to the right to retain those balances, the balances are never part of a bankrupt's estate. *Id*. at 141-42. The *Pearlman* doctrine, as it has become widely known,

holds that a surety that has been equitably subrogated to the debtor's contract balances has a property right in those payments separate from and outside of the debtor's bankruptcy estate. *Id*. at 136-37.

Because Travelers has the obligation to pay the claims of subcontractors and suppliers (including Environmental Operators, if a valid claim is determined), it is equitably subrogated to recover from the Registry Funds any amount paid to satisfy such claims. For example, on another NATCO project that was bonded by Travelers (the "St. Tammany Project"), Travelers has paid claims of subcontractors and has enforced (with this Court's approval) its subrogation right to receive the contract balances for that project. The Registry Funds, as the contract balances for the Plaquemines Parish project, are no different in substance than the contract balances on the St. Tammany Project. Travelers has a subrogation right to receive those Funds in order to pay claims of subcontractors and suppliers.

## B. TRAVELERS AS THE BENEFICIARY OF AN EXPRESS TRUST HAS PRIORITY INTEREST IN THE REGISTRY FUNDS.

Moreover, by executing the Indemnity Agreement, NATCO agreed among other things that the Indemnity Agreement creates an express trust in relation to which the NATCO is the trustee and Travelers and anyone who may assert a claim under Travelers bonds are the beneficiaries. In relevant part, the Indemnity Agreement provides as follows:

> 9. <u>Trust Fund</u>: All payments due or received for or on account of any Contract, whether or not in the possession of any Indemnitor **shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which [Travelers] as beneficiary may be liable under any Bond….**

Numerous courts have held that the same language in indemnity agreements executed in favor of sureties creates and express trust for the benefit of the surety. *See Safeco Insurance Company of America v. Hastings (In re: Hastings)*, 2008 WL 5383586 at * 1 (Bankr. N.D. Ala. Dec. 23,

2008); *International Fidelity Insurance Company v. Fox (In re: Fox)*, 357 B.R. 770, 778 (Bankr. E.D. Ark. 2006) ("it is well-settled that the indemnity provision in the Indemnity Agreement at issue in this case creates a fiduciary relationship"); *United States Fidelity & Guaranty Company v. Maxon Engineering Services, Inc. (In re: Maxon Engineering Services, Inc.)*, 332 B.R. 495, 499-500 (Bankr. Puerto Rico 2005); *In re: Hendron*, 277 B.R. 765 (Bankr. E.D. Ark. 2002); *In re: McCormick*, 283 B.R. 680 (Bankr. W.D. Pa. 2002); *In re: McIntosh*, 320 B.R. 22 (Bankr. M.D. Fla. 2005).

Numerous bankruptcy courts have gone further to find that where the debtor breaches the trust obligations found in the surety's indemnity agreement, the breach constitutes defalcation giving rise to a non-dischargeable obligation pursuant to 11. U.S.C. § 523. In *Safeco Insurance Company of America v. Hastings (In re: Hastings)*, 2008 WL 5383586 at * 2, after confirming that language in Safeco's indemnity agreement (similar to the language in Travelers' Indemnity Agreement in this case) created an express trust, the Court found "that any use of the bond funds…to pay expenses for which [the surety] was not liable, even [the contractor's] otherwise legitimate business expenses for the project, will constitute a defalcation for purposes of §523(a)(f)." *See also International Fidelity Insurance Company v. Fox (In re: Fox)*, 357 B.R. at 779-80.

In *United States Fidelity & Guaranty Company v. Maxon Engineering Services, Inc. (In re: Maxon Engineering Services, Inc.)*, 332 B.R. 495 (Bankr. P.R. 2005), the bankruptcy court granted the surety's Motion for Adequate Protection of its interest in bonded contract payments. While the court held that the project funds were property of the estate due to the debtor's legal title to the funds, the court noted that the **debtor's rights were subject to the surety's equitable lien arising from the trust created by the indemnity agreement.** *Id.* at 500. The court

ordered that the debtor deposit the bonded contract proceeds into a segregated account, use the segregated funds solely to pay bonded project related obligations, and account to the surety for the use of the contract funds on a bi-weekly basis. *Id.* At the very least, if turned over from the State District Court, the Registry Funds must be placed in a segregated account to pay the bonded project obligations, which at this time includes the obligation to Travelers and/or Environmental Operators.

Additionally, Louisiana has adopted statutory provisions addressing a contractor's obligation to pay its labormen, materialmen, and suppliers out of the contract balances. *See e.g.,* LSA-R.S. § 14:202. This statute in effect creates a trust upon the contract balances for the benefit of laborers, materialmen, and suppliers on the projects. LSA-R.S. § 14:202 provides, in relevant part, as follows:

> No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.

Therefore, even absent the express trust in the Indemnity Agreement, the Registry Funds are trust funds which must be disbursed to materialmen and laborers providing work on the project— including Environmental Operators, to the extent its claim is valid. The Registry Funds cannot reach the hands of the Debtor, its estate, or its general unsecured or secured creditors until it is finally and dispositively determined that Environmental Operators' claim to the Registry Funds and, therefore, claim against Travelers has been fully satisfied or determined to be invalid.

### C. TRAVELERS HAS A PRIORITY RIGHT TO THE REGISTRY FUNDS BASED UPON PRIOR ORDER OF THIS COURT.

Finally, in addition to the express trust created by the Indemnity Agreement, the Agreed Order entered by this Court on June 3, 2009 (Main Case No. 09-51245, Docket No. 48) recognizes Travelers' priority interest in bonded contract proceeds, as the surety issuing bonds on behalf of Debtor. Pursuant to the Agreed Order, the Registry Funds, as contract balances on a bonded project, **should be paid to Travelers** until all bonded obligations are satisfied, which would include the obligation to pay Environmental Operators out of the Registry Funds if it is determined that Environmental Operators is entitled to additional compensation. The Agreed Order clearly allows Travelers to hold the funds until the bonded obligations are fully and finally satisfied, released, or discharged.

### D. NATCO HAS ONLY A LEGAL INTEREST, *IF ANY*, IN THE REGISTRY FUNDS.

Under the Bankruptcy Code, § 541(d), "[p]roperty in which the debtor holds...only legal title and not an equitable interest...becomes property of the estate...**only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.**" (emphasis added). Therefore, pursuant to 11 U.S.C. § 541(d), Travelers' rights as beneficiary of the express trust imposed by the Indemnity Agreement and the equitable rights of the subcontractors and suppliers on the bonded projects as beneficiaries of the trust imposed by applicable statutes demonstrate that the Registry Funds may not be used for the benefit of the estate.

Based upon Travelers' rights as the trust fund beneficiary, its rights under the Agreed Order, and to the extent that the State Court Litigation is adjudicated in favor of Environmental Operators, the only arguable right to the Funds that NATCO could retain is bare legal title

subject to the obligation to disburse the funds to pay either Travelers or Environmental Operators. *See Varon v. Salmon (In re: Martin Fein & Co., Inc.)*, 43 B.R. 623, 626 (Bankr. S.D.N.Y. 1984) ("[W]here the debtor's interest in property consists only of bare legal title to a constructive trust, lacking any equitable interest in the trust res, the estate acquires nothing more than bare legal title."). Where a debtor has legal title to certain property, the debtor has no right to recover the property for the benefit of the estate. *Krommenhoek v. A-Mark Precious Metals, Inc. (In re: Bybee)*, 945 F.2d 309, 315 (9th Cir. 1991) ("Property in which the debtor possessed only legal title cannot be recovered for the benefit of the bankruptcy estate."). In this case, NATCO has at best bare legal title to the Registry Funds. Therefore, if the Registry Funds are interplead into this Court's registry, NATCO may not use said funds for any purpose, including general operational expenses, until the interpleader action has been resolved in its entirety.

### III.    CONCLUSION

If a debtor improperly uses contract balances and fails to pay its subcontractors and suppliers on a given project, it can be found liable for defalcation and the creditor's claim can be rendered non-dischargeable. However, it may be an empty victory because the prevailing creditor may likely never see its money. Here, the Registry Funds are presently available and secure. Upon adjudication of the parties' interest(s) in the Funds, they can be immediately disseminated as determined by court order. No loss or injustice is suffered if the Funds remain set aside because they are earmarked funds with a specific purpose attached. If they are interplead into this Court, there is no justification to allow NATCO to take possession of funds which are presently held secure and to risk that Travelers will suffer the loss of those Funds, to which it is rightfully entitled. It would be no different than allowing Environmental Operators to take possession of the Registry Funds and use them to support its business. Therefore, to the

extent this Court finds it reasonable to allow the State District Court Clerk to interplead the Registry Funds into this Court, any claims to the interplead funds must be subject to Travelers' rights and interests therein, and distribution of any interplead funds may not occur until a final determination of those interests.

Travelers does not attempt by this Objection to cause the State District Court Clerk to incur costs or expenses of litigation in this forum or other inconvenience. To that end, Travelers would not object to an order allowing for deposit of the Registry Funds into the registry of this Court provided, however, that any such order would also provide that the Registry Funds would be first used to pay any valid lien claim of Environmental Operators on the Registry Funds and any valid bond claim asserted by Environmental Operators against Travelers. This may require the Funds to remain in the registry of this Court pending a determination by the Louisiana court of the validity and enforceability of Environmental Operators' claims and rights against Travelers. While Travelers agrees with the Debtor that Environmental Operators' lien claim and bond claim will ultimately be determined to be invalid and unenforceable under Louisiana law, Travelers is not the arbiter of that issue and must be protected against loss by the availability of the Registry Funds to satisfy any judgment awarded to Environmental Operators.

**WHEREFORE, PREMISES CONSIDERED**, Travelers Casualty and Surety Company of America requests that if the Registry Funds are interplead, this Court set aside the Funds until the State Court Litigation is resolved, or alternatively, enter judgment in favor of the Travelers such that the Travelers may recover the full amount of the interpleaded funds to be used to pay bonded obligations in accordance with the Agreed Order entered on June 3, 2009 (Main Case No. 09-51245, Docket No. 48), and for such other, further, and general relief as this Honorable Court may deem just and proper.

Respectfully submitted,

*/s/ Jeffrey S. Price*

**JEFFREY S. PRICE**
**REBECCA B. HOWALD**
**MANIER & HEROD, P.C.**
150 4th Ave. North, Suite 2200
Nashville, TN  37219
Tel.:    (615) 244-0030
Fax:    (615) 242-4203
jprice@manierherod.com
rhowald@manierherod.com

**Counsel to Travelers Casualty and Surety Company of America**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Answer to the Complaint was served upon the parties listed below, in the manner so indicated, on this the ___ day of September, 2009:

**VIA CM/ECF:**
Fred M. Leonard on behalf of Debtor NATCO, Inc.
fredmleonard@earthlink.net

Mark S. Dessauer on behalf of Cross-Claimant Honorable Dorothy M. Lundin, Clerk of the 25th Judicial District Court For the parish Of Plaquemines
dessauer@hsdlaw.com, bchase@hsdlaw.com

**VIA U.S. MAIL**

| | |
|---|---|
| Marcus Giusti | Michael L. Mullins |
| 2201 Ridgelake Drive, First Floor | 8056 Hwy 23, Suite 300 |
| Metarie, LA 70007 | Belle Chase, LA 70037 |
| *on behalf of Defendant Environmental Operators, LLC* | *on behalf of Defendant Plaquemines Parish Government* |

*/s/ Jeffrey S. Price*
Jeffrey S. Price